## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **JOEL BROOKS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Civil Action No.** |
| **v.** ) | **23-11036-BEM** |
| ) | |
| **SIMOS INSOURCING SOLUTIONS LLC,** ) | |
| **TRUEBLUE, INC., and JIM OLIVEIRA,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM AND ORDER ON
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**MURPHY, J.**

Plaintiff Joel Brooks ("Mr. Brooks") brings this action against Defendants SIMOS Insourcing Solutions, LLC ("SIMOS"), TrueBlue, Inc. ("TrueBlue"), and Jim Oliveira ("Mr. Oliveira") (collectively, "Defendants"), alleging race-based discrimination, hostile work environment, and retaliation in employment in violation of Mass. Gen. Laws c. 151B ("Chapter 151B"). Before the Court is Defendants' motion for summary judgment ("Defendants' Motion"). For the reasons set forth below, the Court DENIES Defendants' Motion.

### I.    Background

#### A.    Factual Background

SIMOS is a staffing company that handles distribution, fulfillment and manufacturing roles for its clients. *See* Dkt. 48 ("Defs.' SOF") ¶ 1. SIMOS is a subsidiary of TrueBlue, another staffing company. *Id.* ¶ 3. TrueBlue provides human resources support to SIMOS, including training SIMOS managers and employees on handling complaints and helping SIMOS conduct formal

investigations. Dkt. 51 ("Pl.'s SOF") ¶¶ 84, 86.  TrueBlue's policies regarding race discrimination also applied to SIMOS employees.  *Id.* ¶ 86.

Mr. Brooks is an African American male.  Defs.' SOF ¶ 6.  Starting around April 2019, he worked for SIMOS as a warehouse associate, as part of a team working at the warehouse of SIMOS's customer, Williams-Sonoma, Inc. ("Williams-Sonoma"), located in Taunton, Massachusetts (the "Warehouse").  *Id.* ¶¶ 6–7.  Williams-Sonoma retained control over the Warehouse, including the authority to remove SIMOS employees from the Warehouse.  *Id.* ¶ 9.

As a warehouse associate, Mr. Brooks was responsible for unloading delivery trucks, conducting quality control of the delivered products, and organizing the products.  *Id.* ¶ 11.  Around July 2020, Mr. Brooks was promoted to lead warehouse associate.  *Id.* ¶ 14.  Shortly thereafter, SIMOS hired Mr. Oliveira as Supervisor of SIMOS operations at the Warehouse.  *Id.* ¶ 16.  As a result, Mr. Oliveira became Mr. Brooks's direct supervisor.  *Id.*

While working at the Warehouse, Mr. Brooks alleges that he was subject to offensive, race-based remarks and disparate treatment, particularly at the hand of Mr. Oliveira.  Pl.'s SOF ¶¶ 17, 43–48, 50, 57.  Mr. Brooks points to contemporaneous text messages supporting at least some of these allegations.  *Id.* ¶¶ 61, 65.  It is undisputed that Mr. Brooks complained about the treatment to employees and managers at Williams-Sonoma and SOMOS.  *Id.* ¶¶ 22, 44, 46, 49; Defs.' SOF ¶¶ 21–22, 30.  However, the parties dispute whether raising issues with Williams-Sonoma, a client, was against SOMOS's policies.  Defs.' SOF ¶¶ 21–23; Pl.'s SOF ¶¶ 21–23.  No report was formally made to human resources and no formal investigation was ever conducted related to Mr. Brooks's complaints.  Defs.' SOF ¶ 18; Pl.'s SOF ¶¶ 49, 52–53, 74.

Mr. Brooks was terminated on September 16, 2024.  Defs.' SOF ¶ 35.  Mr. Brooks alleges that his termination was in retaliation for his reporting racial discrimination.  Pl.'s SOF ¶¶ 64–66.

Defendants point instead to certain performance issues and directions from their client, Williams-Sonoma.  Defs.' SOF ¶¶ 26–28, 34.  At least some of these performance issues were contemporaneously documented.  *Id.* ¶ 27.  Mr. Brooks denies these performance issues.  Pl.'s SOF ¶ 67.

After Mr. Brooks was terminated, Defendants claim that "work similar to the work [Mr. Brooks] performed was carried out by Oscar Bolding . . . [who] identified as Black or African American."  Defs.' SOF ¶ 37.  Mr. Brooks alleges that he was replaced by an employee named Robert, though he provides no further identifying characteristics.  Pl.'s SOF ¶ 83.

### B.  <u>Procedural History</u>

Mr. Brooks filed this action on March 4, 2024, in Massachusetts Superior Court.  Dkt. 1-1.  Defendants removed the case to this Court on May 10, 2024.  Dkt. 1.  Defendants have now moved for summary judgment.  Dkt. 46.  The Court heard oral arguments on April 3, 2025, and took the matter under advisement.

## II.    <u>Legal Standard</u>

Summary judgment will only be granted where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Grogan v. All My Sons Bus. Dev. LLC*, 552 F. Supp. 3d 142, 145 (D. Mass. 2021) (quoting Fed. R. Civ. P. 56(a)).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  The Court must view "the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor."  *Noonan v. Staples, Inc.*, 556 F.3d 20, 25 (1st Cir. 2009).

"At summary judgment, the court's task is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* (citations and internal quotes omitted). "[W]hen the facts support plausible but conflicting inferences on a pivotal issue in the case, the judge may not choose between those inferences at the summary judgment stage." *Coyne v. Taber Partners I*, 53 F.3d 454, 460 (1st Cir. 1995). As such, "[s]ummary judgment is not appropriate merely because the facts offered by the moving party seem most plausible, or because the opponent is unlikely to prevail at trial," regardless of any skepticism the Court may hold as to the merits of a case. *Hazard v. S. Union Co.*, 275 F. Supp. 2d 214, 222 (D.R.I. 2003); *see also United States v. New England Merchants Nat. Bank*, 465 F. Supp. 83, 86 (D. Mass. 1979) ("The plaintiffs have a right to a trial '. . . where there is the slightest doubt as to the facts.'" (quoting *Peckham v. Ronrico Co.*, 171 F.2d 653, 657 (1st Cir. 1948); *Landy v. Silverman*, 189 F.2d 80, 82 (1st Cir. 1951)).

Employment discrimination claims involve elusive concepts such as motive or intent, but summary judgment is appropriate "if the non-moving party 'rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.'" *Feliciano de la Cruz v. El Conquistador Resort & Cnty. Club*, 218 F.3d 1, 5 (1st Cir. 2000) (citations omitted). Even so, a court "should exercise particular caution before granting summary judgment for employers on such issues as pretext, motive, and intent." *Adamson v. Walgreens Co.*, 750 F.3d 73, 83 (1st Cir. 2014).

### III.    <u>Discussion</u>

Mr. Brooks presents three theories for his Chapter 151B claims: discrimination, hostile work environment, and retaliation. The Court will analyze each claim against SIMOS before turning to the remaining defendants.

4

A. **Discrimination**

Where, as here, Mr. Brooks has not offered direct evidence[1] of unlawful discrimination, the *McDonnell Douglas* burden-shifting framework applies. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973); *Straughn v. Delta Air Lines, Inc.*, 250 F.3d 23, 33 (1st Cir. 2001); *Knight v. Avon Prods., Inc.*, 438 Mass. 413, 420 (2003). "To establish a *prima facie* case of racial discrimination, [plaintiff] must show that (1) he belonged to a protected class, a racial minority; (2) he was performing his job at a level that rules out the possibility that he was fired for job performance; (3) he suffered an adverse job action by his employer; and (4) his employer sought a replacement for him with roughly equivalent qualifications." *Benoit v. Tech. Mfg. Corp.*, 331 F.3d 166, 173 (1st Cir. 2003) (citations omitted).[2] "[T]he plaintiff's initial burden of establishing a prima facie case is not intended to be onerous." *Sullivan v. Liberty Mut. Ins. Co.*, 444 Mass. 34, 45 (2005).

Once a plaintiff establishes a *prima facie* case of racial discrimination, a defendant must articulate "a legitimate, non-discriminatory reason for its adverse employment action." *Benoit*, 331 F.3d at 174 (quoting *Straughn*, 250 F.3d at 33). "[A] defendant 'need only produce enough competent evidence, *taken as true,* to enable a rational factfinder to conclude that there existed a nondiscriminatory reason for the challenged employment action.'" *Heard v. Commonwealth of Massachusetts*, 2003 WL 21960726, at *3 (D. Mass. Aug. 11, 2003) (emphasis in original) (quoting *Ruiz v. Posadas de San Juan Assocs.*, 124 F.3d 243, 248 (1st Cir. 1997)).

---

[1] Direct evidence "consists of statements by a decisionmaker that directly reflect the alleged animus and bear squarely on the contested employment decision." *Zampierollo-Rheinfeldt v. Ingersoll-Rand de Puerto Rico, Inc.*, 999 F.3d 37, 51 (1st Cir. 2021) (citations omitted). Mr. Brooks has not offered direct evidence, and both parties agree the *McDonnell Douglas* framework applies.

[2] Massachusetts courts consider federal case law construing federal anti-discrimination statutes in interpreting Chapter 151B. *See Wheatley v. Am. Tel. & Tel. Co.*, 418 Mass. 394, 397 (1994). However, per legislative directive, Chapter 151B "is to be applied liberally." *See Cuddyer v. Stop & Shop Supermarket Co.*, 434 Mass. 521, 532 (2001).

When a defendant carries its burden of production to identify a non-discriminatory business reason for termination, the burden returns to the plaintiff to "proffer[] evidence to establish that defendant's non-discriminatory justification is mere pretext, cloaking discriminatory animus." *Id.* (citing *McDonnell Douglas*, 411 U.S. at 804); *see also Siupa v. Astra Tech, Inc.*, 2013 WL 4854031, at *10 (D. Mass. Sept. 10, 2013), *aff'd sub nom. Ryan v. Astra Tech, Inc.*, 772 F.3d 50 (1st Cir. 2014) ("Massachusetts law regarding pretext is more generous to plaintiffs, [but] still requires a showing that one or more of the employer's proffered reasons are false." (citing *Lipchitz v. Raytheon Co.*, 434 Mass. 493, 501–02 (2001))).

### 1. *Prima Facie* Showing

Defendants argue that Mr. Brooks fails to make out a prima facie case of discrimination because he did not perform his job at a satisfactory level. Dkt. 47 ("Defs.' Memo.") at 5. But whether Mr. Brooks was intoxicated at work or caused problems by communicating with Williams-Sonoma directly is the subject of genuine dispute. *See* Pl's SOF ¶¶ 23, 26. As such, viewing the evidence in the light most favorable to Mr. Brooks, there is ample evidence from which a reasonable jury could conclude that Mr. Brooks performed his job at a satisfactory level. Additionally, while Defendants argue that they filled Mr. Brooks's role with an employee who identifies as the same race as Mr. Brooks, Defs.' SOF ¶ 37, the final *McDonnell Douglas* factor requires a showing that the plaintiff was "replaced by someone 'with roughly equivalent qualifications.'" *Williams v. Raytheon Co.*, 45 F. Supp. 2d 124, 131 (D. Mass. 1999), *aff'd*, 220 F.3d 16 (1st Cir. 2000) (quoting *Smith v. Stratus Comput., Inc.*, 40 F.3d 11, 15 (1st Cir. 1994)). Even if Mr. Brooks was replaced by an employee of the same race, that would not necessarily defeat his race discrimination claims. *See Melendez v. Autogermana, Inc.*, 622 F.3d 46, 50 (1st Cir. 2010) (explaining final *McDonnell Douglas* factor requires plaintiff to establish "that the

employer filled the position, thereby showing a continuing need for the services that [the plaintiff] had been rendering"). Moreover, Mr. Brooks has identified evidence that disputes SIMOS's claim as to who replaced Mr. Brooks. *See* Pl.'s SOF ¶ 83. As such, Mr. Brooks has met his burden to establish a *prima facie* case of race discrimination under Chapter 151B.

## 2. Pretext and Discriminatory Animus

Assuming without deciding that Defendants have presented a non-discriminatory reason for Mr. Brooks's firing, there is a material question of fact as to whether that reason was merely pretextual. Mr. Brooks argues that Defendants' alleged reliance on Williams-Sonoma's direction to fire him was pretext for Defendants' racial discrimination, as evidenced by Mr. Oliveira's allegedly racist statements.[3] *See* Dkt. 50 at 11–15. Defendants argue that Mr. Oliveira's comments at most amount to "stray remarks" that do not demonstrate pretext because the ultimate decision to terminate Mr. Brooks was made by Williams-Sonoma. *See* Defs.' Memo. at 8–11. But Mr. Oliveira testified that he made the initial decision to fire Mr. Brooks, and the evidence suggests that Williams-Sonoma's request to remove Mr. Brooks was based on Mr. Oliveira's report. *See* Pl.'s SOF ¶¶ 67–69. A reasonable jury could find that Mr. Oliveira's various comments indicate that the stated basis for termination was false. *See Bulwer v. Mount Auburn Hosp.*, 473 Mass. 672, 689 (2016) ("The question of whose interpretation of the evidence is more believable, 'raised by the [parties'] conflicting evidence as to the defendant[s'] motive, is not for a court to decide on the basis of [briefs and transcripts], but is for the fact finder after weighing the circumstantial evidence and assessing the credibility of the witnesses.'" (alterations in original) (quoting *Lipchitz*, 434 Mass. at 502)). As such, Mr. Brooks has met his burden to survive summary judgment with respect to his claim for racial discrimination.

---

[3] Mr. Brooks points to evidence in the record that he argues demonstrates that he was subject to offensive, race-based remarks and disparate treatment, particularly at the hand of Mr. Oliveira. Pl.'s SOF ¶¶ 17, 43–48, 50, 57.

###### B. **Hostile Work Environment**

Defendants argue that Mr. Brooks's hostile work environment claims fail because his allegations do not rise to the level of severity or pervasiveness required.  Defs.' Memo. at 11.  "A hostile work environment is one that is 'pervaded by harassment or abuse, with the resulting intimidation, humiliation, and stigmatization, [and that] poses a formidable barrier to the full participation of an individual in the workplace.'"  *Cuddyer*, 434 Mass. at 532 (citations omitted). A hostile work environment claim requires, among other things, that "the conduct alleged was both 'subjectively offensive' and 'sufficiently severe and pervasive to interfere with a reasonable person's work performance.'"  *Gyulakian v. Lexus of Watertown, Inc.*, 475 Mass. 290, 296 (2016).

Mr. Brooks has identified several allegedly racist comments made throughout his approximately three-month employment under Mr. Oliveira's supervision.  *See Brockman v. NAES Corp.*, 2021 WL 863471, at *8 (D. Conn. Mar. 8, 2021) (collecting cases where racial stereotypes, without reference to race, supported finding of hostile work environments).  Moreover, Mr. Brooks has pointed to evidence tending to suggest several examples of Mr. Oliveira allegedly treating black employees less favorably than white employees with regards to work assignments and conditions.  *See* Dkt. 50 at 2–3.  While at oral arguments, Defendants contended that this was factually impossible or attributable to Mr. Brooks as the lead warehouse associate, that kind of weighing of the evidence is not appropriate at summary judgment, in which posture the Court views the evidence in the light most favorable to Mr. Brooks.  *See Noonan*, 556 F.3d at 25 ("At summary judgment, the court's task is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." (internal quotes omitted)).

Thus, Mr. Brooks has identified sufficient evidence from which a jury could conclude he was subjected to severe or pervasive conduct that was objectively hostile.  *See Conto v. Concord*

*Hosp., Inc.*, 265 F.3d 79, 81 (1st Cir. 2001) (explaining that a hostile environment claim "necessarily entail[s] a fact-specific assessment of all the attendant circumstances"); *see also Dacunha v. Skip Sagris Enters.*, 2020 WL 5217059, at *6 (D. Mass. Aug. 31, 2020) (finding that, at summary judgment, plaintiff's reports of almost daily harassing comments over the course of one month were sufficient to allow a jury to determine whether conduct was pervasive); *Gorski v. N.H. Dep't of Corr.*, 290 F.3d 466, 474 (1st Cir. 2002) (holding that factfinder should determine the degree of severity or pervasiveness); *Sullivan v. Mass. Bay Commuter R.R. Co., LLC*, 2009 WL 1067184, at *8 (D. Mass. Apr. 22, 2009) ("The question of whether a plaintiff was subjected to an objectively hostile environment should generally be determined by the finder of fact, assess[ing] the matter on a case-by-case basis, weighing the totality of the circumstances." (internal quotations omitted)).  As such, Mr. Brooks has met his burden to survive summary judgment with respect to his claim for hostile work environment.

### C. <u>Retaliation</u>

Defendants argue that Mr. Brooks cannot establish his retaliation claims because he cannot show a causal connection between his reports of discriminatory conduct and his termination, and because there was a legitimate, non-retaliatory reason for his termination.  Defs.' Memo. at 15–16. A *prima facie* retaliation claim under Chapter 151B requires a showing that a plaintiff engaged in legally protected conduct, suffered an adverse employment action, and that the two elements were causally connected.  *Mole v. Univ. of Mass.*, 442 Mass. 582, 591–92 (2004).  "[T]he employer's desire to retaliate against the employee must be shown to be a determinative factor in its decision to take adverse action."  *Psy-Ed Corp. v. Klein*, 459 Mass. 697, 707 (2011).  "[I]f adverse action is taken against a satisfactorily performing employee in the immediate aftermath of the employer's becoming aware of the employee's protected activity, an inference of causation is permissible."

*Mole*, 442 Mass. at 592 (citing *Mesnick v. General Elec. Co.*, 950 F.2d 816, 827 (1st Cir. 1991), *cert. denied*, 504 U.S. 985 (1992) ("'[T]emporal proximity of an employee's protected activity to an employer's adverse action' is circumstantial evidence that allows retaliation claim to get past summary judgment.")).  Once a plaintiff establishes a *prima facie* case of retaliation, the same burden-shifting analysis discussed above applies.  *See Abramian v. President & Fellows of Harvard Coll.*, 432 Mass. 107, 121 (2000).

Defendants do not dispute that Mr. Brooks engaged in legally protected conduct and suffered an adverse employment action, focusing instead on causation and pretext.  *See* Defs.' Memo. at 15–16.  While Defendants argue Mr. Brooks's retaliation claims fail because legitimate, non-discriminatory problems with his employment justified his termination at Williams-Sonoma's direction, as discussed above, when viewed in the light most favorable to Mr. Brooks, Mr. Brooks has raised a genuine issue of fact as to the basis for his termination.  *See Wright v. Compusa, Inc.*, 352 F.3d 472, 478 (1st Cir. 2003) ("[T]he evidence presented by [plaintiff] creates a triable issue of fact as to whether his discharge was in fact due to [defendants' non-discriminatory basis] or whether [defendants' non-discriminatory basis] masked retaliation.").  As such, Mr. Brooks has met his burden to survive summary judgment with respect to his claims for retaliation.

### D.  Claims Against Defendant Jim Oliveira

Defendants argue that Mr. Brooks's claims against Mr. Oliveira fail for the same reasons Mr. Brooks's discrimination and retaliation claims fail, and because Mr. Brooks does not identify evidence of Mr. Oliveira's intent to discriminate.[4]  Defs.' Memo. at 18.  "In order for an individual . . . to be held liable for a violation of [Chapter] 151B, the individual must have interfered with

---

[4] Defendants also argue that Mr. Brooks failed to identify a "wholly individual and distinct wrong."  Dkt. 47 at 18.  However, an interference claim does not require that Mr. Oliveira committed a "wholly individual and distinct wrong."  *See Furtado v. Standard Parking Corp.*, 820 F. Supp. 2d 261, 278–79 (D. Mass. 2011) (listing elements for interference claim).

another's rights in a manner that was in deliberate disregard of those rights." *Canfield v. Con-Way Freight, Inc.*, 578 F. Supp. 2d 235, 242 (D. Mass. 2008) (citing *Woodason v. Town of Norton Sch. Comm.*, 2003 WL 554332, at *4 (MCAD Feb. 19, 2003)). Here, it is uncontested that Mr. Oliveira directly supervised Mr. Brooks and, as such, was in a position to act on behalf of SIMOS. Defs.' SOF ¶ 16. As further described above, Mr. Brooks has sufficiently met his burden to survive summary judgment with respect to his general claim of racial discrimination. The evidence of Mr. Oliveira's allegedly discriminatory animus, paired with Mr. Oliveira's central role in Mr. Brooks's termination, could lead a reasonable jury to conclude that Mr. Oliveira implicated Mr. Brooks's right to be free from race discrimination and showed a "deliberate disregard" of that right. *See Moser v. Cheney*, 2014 WL 3048783, at *9–10 (Mass. Super. Ct. May 4, 2014) (citations omitted) ("Where the individual is the alleged perpetrator, she may be charged with 'interfering with one's exercise or enjoyment of the right to a non-discriminatory, harassment free, workplace.'" (emphasis omitted)). As such, Mr. Brooks has met his burden to survive summary judgment with respect to his claim of interference against Mr. Oliveira.

### E.    Claims Against Defendant TrueBlue, Inc.

Lastly, Defendants argue that TrueBlue does not qualify as Mr. Brooks's employer under Chapter 151B, and thus cannot be liable. "Massachusetts cases have determined that an employer can be defined by who has direction and control of the employee and to whom . . . [the employee] owe[s] obedience in respect of the performance of his work." *DeLia v. Verizon Commc'ns Inc.*, 656 F.3d 1, 4 (1st Cir. 2011) (alteration in original) (internal quotations omitted) (quoting *Roberts v. Delta Air Lines, Inc.*, 599 F.3d 73, 77 (1st Cir. 2010)). Two or more businesses may be so interrelated that they are treated as a "single employer." *See, e.g.*, *Wilfert Bros. Realty Co. v. Mass. Comm'n Against Discrimination*, 2006 WL 935105, at *2 (Mass. Super. Ct. Mar. 21, 2006)

(affirming holding regarding joint employer liability, concluding that the two defendant companies are both "joint" employers and "single" employer).  To determine the existence of a "single employer," courts consider the "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control."  *Id.* (citations omitted).  The First Circuit has explained that "the test should be applied flexibly, placing special emphasis on the control of employment decisions."  *Torres-Negron v. Merck & Co., Inc.*, 488 F.3d 34, 42 (1st Cir. 2007) (citing *Romano v. U-Haul Int'l*, 233 F.3d 655, 662 (1st Cir. 2000)).

Defendants argue that Mr. Books has failed to identify evidence to show that TrueBlue acted as a single employer sufficient to hold TrueBlue liable under Chapter 151B.  *First*, it is undisputed that SIMOS is one of TrueBlue's business lines and that both companies perform nearly identical functions.  Defs.' SOF ¶¶ 1, 3; Pl.'s SOF ¶ 10; *see also Torres-Negron*, 488 F.3d at 42 (holding that "perform[ing] substantially the same function" and "centralized . . . human resources and personnel policies" are relevant factors to the "interrelation between corporations").  *Second*, the record shows that TrueBlue's role included assisting SIMOS with human resources training and formal investigations when requested by SIMOS.  Pl.'s SOF ¶¶ 84, 86.  While SIMOS retained some responsibility over enforcing policies and conducting investigations, Mr. Brooks has raised a genuine dispute as to whether TrueBlue's policies and procedures also applied to SIMOS.  *See Torres-Negron*, 488 F.3d at 42–43 (finding "company-wide human resources and personnel policies applicable to all its subsidiaries" weighed in favor of a single-employer finding); *cf. Delia*, 656 F.3d at 5 (holding that shared policy did not support employer finding for parent company where parent company expressly disclaimed supervision or control of subsidiary employees).  From this record, a jury could conclude that TrueBlue retained sufficient control over employment decisions to satisfy the "single employer" test.  *See Torres-Negron*, 488 F.3d at 42 ("[T]he

[single-employer] test should be applied flexibly, placing special emphasis on the control of employment decisions." (citing *Romano*, 233 F.3d at 666)).  As to the final two factors, TrueBlue's status as SIMOS's parent company suggests that the two companies share at least some degree of common management and common ownership or financial control.  *See* Defs.' SOF ¶ 3.  Thus, considering the evidence in the light most favorable to Mr. Brooks, Mr. Brooks has met his burden to survive summary judgment with respect to his claims against TrueBlue.

IV.    **Conclusion**

It may well be that Mr. Brooks's case fails when presented to a jury further down the line, but at this juncture, the Court finds issues of material fact that prevent summary judgment.  Thus, for the reasons stated, Defendants' motion for summary judgment (Dkt. 46) is DENIED.

**So Ordered.**

/s/ Brian E. Murphy
Brian E. Murphy
Dated:  April 4, 2025                    Judge, United States District Court